TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiffs, proposed FLSA Collective and potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

<u>Case No.</u> **19-cv-02017**

-------------------------------------------------------X

SHANGMING LU,
MARIA OLGA LLIGUICOTA
*on their behalf and on behalf of others similarly situated*

<u>**29 U.S.C. § 216(b)**</u>
<u>**COLLECTIVE ACTION &**</u>
<u>**FED. R. CIV. P. 23 CLASS**</u>
<u>**ACTION**</u>

Plaintiffs,

v.

DIAMOND NAIL SALON, LLC
   d/b/a Diamond Nail & Spa;
GUI BIAO QI a/k/a Leo Qi,
ELAINE BAO a/k/a Helen Bao a/k/a Ellen Bao, and
JOSE ROJAS,

**COMPLAINT**

Defendants.

-------------------------------------------------------X

Plaintiffs SHANGMING LU and MARIA OLGA LLIGUICOTA (hereinafter referred to as "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorney, Troy Law, PLLC, hereby bring this complaint against Defendants DIAMOND NAIL SALON, LLC d/b/a Diamond Nail & Spa; GUI BIAO QI a/k/a Leo Qi, ELAINE BAO a/k/a Helen Bao a/k/a Ellen Bao, and JOSE ROJAS,, and alleges as follows:

**<u>INTRODUCTION</u>**

1.    This action is brought by the Plaintiffs SHANGMING LU and MARIA OLGA LLIGUICOTA on behalf of themselves as well as other employees similarly situated, against the Defendants for alleged violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq.* and of the Connecticut Minimum Wage Act ("CMWA"), Connecticut General Statutes Section 31-68 *et seq.*, arising from Defendants' various willfully and unlawful employment policies, patterns and practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and CMWA by engaging in pattern and practice of failing to pay its employees, including Plaintiffs, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage, (2) unpaid overtime wages (3) liquidated damages, (4) prejudgment and post-judgement interest; and or (5) attorney's fees and cost .

4.      Plaintiffs further allege pursuant to the Connecticut law, Connecticut General Statutes Section 31-68 *et seq.* and Connecticut Public Act 15-86 that he is entitled to recover from the Defendants: (1) double unpaid minimum wages, (2) double unpaid overtime compensation, (3) pre-judgment and post-judgment interest, and (4) attorney's fees and costs.

## JURISDICTION AND VENUE

5.      This United States District Court for the District of Connecticut  has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the Connecticut  Minimum Wage Act claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.      From on or about December 01, 2019 to present, Plaintiff SHANGMING LU is employed by Defendants to work as a company transportation van driver and nail saloon worker at 107 Greenwich Ave, Greenwich, CT 06830.

8.      From on or about January 01, 2012 to October 03, 2019, Plaintiff MARIA
OLGA LLIGUICOTA was employed by Defendants to work as a nail salon manicurist
manicurist at 107 Greenwich Ave, Greenwich, CT 06830.

## DEFENDANTS

### *Corporate Defendant*

9.      Defendant DIAMOND NAIL SALOON LLC d/b/a Diamond Nail & Spa is a
domestic business corporation organized under the laws of the State of New York with a
principal address at 107 Greenwich Ave, Greenwich, CT 06830.

10.     DIAMOND NAIL SALOON LLC d/b/a Diamond Nail & Spa is a business
engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars
($500,000) per year.

11.     DIAMOND NAIL SALOON LLC d/b/a Diamond Nail & Spa purchased and
handled goods moved in interstate commerce.

### *Owner/Operator Defendants*

12.     JOSE ROJAS is the Owner of DIAMOND NAIL SALOON LLC d/b/a
Diamond Nail & Spa (1) had the power to hire and fire employees, (2) supervised and
controlled employee work schedules or conditions of employment, (3) determined the rate and
method of payment, and (4) maintained employee records at Diamond Nail Salon LLC.

13.     JOSE ROJAS acted intentionally and maliciously and is an employer pursuant
to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2,
NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Diamond
Nail Salon LLC.

14.     ELANE BAO is the  Owner of DIAMOND NAIL SALOON LLC d/b/a Diamond Nail & Spa, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at Diamond Nail Salon LLC

15.     ELANE BAO a/k/a Helen Bao a/k/a Ellen Bao has actually fired Plaintiff MARIA OLGA LLIGUICOTA.

16.     ELAINE BAO a/k/a Helen Bao a/k/a Ellen Bao acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Diamond Nail Salon LLC.

17.     GUI BIAO QI a/k/a Leo Qi known as "Boss" to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at Diamond Nail  & Spa.

18.     GUI BIAO QI a/k/a Leo Qi had actually hired Plaintiff SHANGMING LU.

19.     Further, GUI BIAO QI a/k/a Leo Qi set Plaintiffs' pay.

20.     On or around February 6, 2019, when the company transportation van was involved in a car accident, the Boss GUI BIAO QI a/k/a Leo Qi asked SHANGMING LU to pay One Thousand Two Hundred Forty Dollars ($1,240) for the losses, and Plaintiff agreed to pay Two Hundred Dollars ($200) per month.

21.     After the Connecticutt Department of Labor fined GUI BIAO QUI a/k/a Leo Qi for wage-and-hour related violations, GUI BIAO QI a/k/a Leo Qi required nail saloon employees to return the checks cut by the CT Department of Labor to him.

22.     GUI BIAO QI a/k/a Leo Qi acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Diamond Nail  & Spa.

## STATEMENT OF FACTS

23.     Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

24.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees at least the Connecticut minimum wage for each hour worked.

25.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

26.     While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

27.     Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

28.     Defendants knew that the nonpayment of overtime pay would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

*Plaintiff SHANGMING LU*

29.     From on or about December 2016 to the present day, Plaintiff SHANGMING LU is employed by Defendants to work as a Driver and Nail Salon Worker at 107 Greenwich Ave, Greenwich, CT 06830.

30.     From in or around December 2016 to December 31, 2018, Plaintiff
SHANGMING LU's regular work schedule run from:

      a.   08:10 to 09:30 (when Plaintiff drove the nail salon's transportation van from
          the pickup location to the store) for one and one third (1 1/3) hours each day
          for at least three (3) days per week and four (4) hours each week;

      b.   09:30 to 19:30 for ten (10) hours per day from Wednesday through Sunday for
          five (5) days and fifty (50) hours per week.

31.     From in or around December 2016 to December 31, 2018, Plaintiff
SHANGMING LU had Mondays and Tuesdays off.

32.     As a result, Plaintiff SHANGMING LU worked for a total of fifty-four (54)
hours each week.

33.     In addition, during the working days, Plaintiff would be required to stay after
the working hours for around fifteen (15) minutes per day.

34.     From on or about January 01, 2019 to the present day, Plaintiff SHANGMING
LU's regular work schedule ran from:

      a.   08:10 to 09:30 on Wednesday for one (1) day each week and

      b.   09:30 to 19:30 on Wednesday, Friday, Saturday, and Sunday for four (4) days,
          or forty (40) hours each week with Monday, Tuesday, and Thursday off.

35.     As a result, from or on about January 01, 2019 to the present day, Plaintiff
SHANGMING LU worked forty-one and one third (41 1/3) hours each week.

36.     At all relevant times, during both of the working periods described above,
Plaintiff SHANGMING LU had no fixed lunch break or rest time.

37.      Instead, Plaintiff SHANGMING LU had 10 minutes to eat lunch and even

then, he was on call, meaning that if customer comes, his break stopped and he had to do his massage work.

38.     At all relevant times, Plaintiff SHANGMING LU was paid fifty dollars ($50) per day, and an additional twenty dollars ($20) a day if he drove the company's transportation van.

39.     Plaintiff was not paid any wage at all from April 1, 2019 to April 12, 2019.

40.     At all relevant times, Plaintiff SHANGMING LU was not paid overtime pay for overtime work.

41.     At all relevant times, Plaintiff SHANGMING LU was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

42.     Throughout his employment, Plaintiff SHANGMING LU was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

43.     Moreover, on February 2, 2019 Plaintiff SHANGMING LU had a car accident while driving his Boss's car and Defendant QI asked Plaintiff SHANGMING LU to pay for the loses.

44.     Plaintiff SHANGMING LU agreed to pay Two Hundred Dollars ($200) per month.

45.     In addition to the failure to pay lawful minimum wage, overtime compensation, and other statutory compensation, Defendants owe Plaintiff SHANGMING LU wages promised to his in the amount of around Three Hundred and Forty Dollars ($340).

*Plaintiff MARIA OLGA LLIGUICOTA*

46.     From 2012 to October 03, 2019, Plaintiff MARIA OLGA LLIGUICOTA was

employed by Defendants to work as a manicurist at 107 Greenwich Ave, Greenwich, CT 06830.

47.     From on or about 2012 to in or around April 2018 Plaintiff MARIA OLGA LLIGUICOTA's regular work schedule ran from:

    a.  09:30 to 19:30 on Tuesday, Thursday, Friday, Saturday and Sunday for Ten (10) hous a day for five (5) days a week without any break for a total of fifty (50) hours each week.

48.     In addition, during the working days, Plaintiff would be required to stay after the working hours for around fifteen (15) minutes per day.

49.     From in or around May 2018 to on or about October 3, 2019, Plaintiff MARIA OLGA LLIGUICOTA's regular work schedule ran from

    a.  09:30 to 19:30 for Four (4) days a week for Ten (10) hours a day without any break. for a total of 40 hours each week.

50.     In addition, during the working days, Plaintiffs would be required to stay after the working hours for around fifteen (15) minutes per day.

51.     At all relevant times, Plaintiff MARIA OLGA LLIGUICOTA did not have a fixed time for lunch.

52.     In fact, Plaintiff MARIA OLGA LLIGUICOTA had Fifteen (15) minutes to eat and even then she was on call, meaning that if customer's order came, her break stopped and he had to deliver.

53.     From January 1, 2012 to December 31, 2014 Plaintiff MARIA OLGA LLIGUICOTA was paid a flat compensation at a rate of Sixty Dollars ($60.00) per day in cash.

54.     From January 1, 2015, to December 31, 2019 Plaintiff MARIA OLGA LLIGUICOTA was paid a flat compensation at a rate of Sixty-Five Dollars ($65) per day in cash.

55.     From January 1, 2016 to December 31, 2016 Plaintiff MARIA OLGA LLIGUICOTA was paid a flat compensation at a rate of Seventy Dollars ($70) per day in cash.

56.     From January 1, 2017 to December 31, 2019 Plaintiff MARIA OLGA LLIGUICOTA was paid a flat compensation at a rate of Seventy Five ($75) per day in cash.

57.     From January 1, 2018 to December 31, 2018 Plaintiff MARIA OLGA LLIGUICOTA was paid a flat compensation at a rate of Eighty Dollars ($80) per day in cash.

58.     From January 1, 2019 to October 3, 2019 2018 Plaintiff MARIA OLGA LLIGUICOTA was paid a flat compensation at a rate of Nighty Dollars ($90) per day in cash

59.     At all relevant times, Plaintiff MARIA OLGA LLIGUICOTA was not paid overtime pay for overtime work in cash.

60.     At all relevant times, Plaintiff MARIA OLGA LLIGUICOTA was never informed of her hourly pay rate or any tip deductions toward the minimum wage.

61.     Plaintiff MARIA OLGA LLIGUICOTA was paid every Sunday along with the other employees.

62.     Throughout her employment, Plaintiff MARIA OLGA LLIGUICOTA was not compensated at least at one-and-one-half her promised hourly wage for all hours worked above forty (40) in each workweek.

## COLLECTIVE ACTION ALLEGATIONS

63.     Plaintiffs bring this action individually and as class representative individually

and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

64.     Plaintiffs bring their Connecticut Minimum Wage Act claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is two years before the filing of the Complaint in this case as defined herein (the "Class Period").

65.     All said persons, including Plaintiffs, are referred to herein as the "Class."

66.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

67.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

68.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.     Whether Defendant employed Plaintiffs and the Class within the meaning of the Connecticut law;

b.     Whether Plaintiffs and Class members are entitled to and paid minimum wage and overtime under the CMWA;

c.     At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

*Typicality*

69.     Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

70.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

*Superiority*

71.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

72.     Upon information and belief, Defendants and other employers throughout the state violate the PAMWA. Current employees are often afraid to assert their rights out of fear

of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Unpaid Wage**
**Brought on behalf of the Plaintiffs and the FLSA Collective]**

73.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

74.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs in full, and the similarly situated collective action members, for some or all of the hours they worked.

75.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

76.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

### COUNT II.
**[CMWA Minimum Wage Violations**
**On Behalf of Plaintiffs and Rule 23 Class]**

77.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though fully set forth herein.

78.     At all relevant times, Plaintiffs were employed by the Defendants within the meaning of Conn. Gen. Stat. §31-58(f).

79.     This claim is brought individually on behalf of the named Plaintiffs as well as on behalf of the Class.

80.     Defendants willfully violated the rights of Plaintiffs and all other members of the Connecticut Class by failing to pay minimum fair wage for all hours worked in violation of Conn. Gen. Stat. §31-62.

81.     Defendants willfully violated the rights of Plaintiffs and all other members of the Connecticut Class by unlawfully deducting from employees' minimum fair wage by requiring delivery employees to pay out of pocket for gasoline and automobile expenses in violation of Conn. Gen. Stat. §31-62-E7.

82.     Defendants willfully failed to distribute records of hours worked, earnings, and overtime to the salon workers, in violation of Conn. Gen. Stat. §31-13a.

83.     Defendants willfully failed to keep records of hours worked by the salon workers, in violation of Conn. Gen. Stat. §31-66.

84.     Based upon the foregoing, Defendants' conduct in this regard was a willful violation of the CMWA, and entitles Plaintiffs and all other members of the Connecticut Class to compensation for all hours worked at the full minimum wage, penalty damages, interest, and court costs.

85.     Defendants' conduct in failing to pay Plaintiffs and all other members of the Connecticut Class their earned compensation was unreasonable, arbitrary and/or in bad faith, in that Defendants knew or should have known that they were entitled to be paid the full fair

minimum wage for all hours worked, but failed to do so. Accordingly, Plaintiffs and all other members of the Connecticut Class are entitled to compensation for all hours worked at the full fair minimum wage, penalty damages, attorneys' fees, and court costs.

### COUNT III.
**[Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiffs and the FLSA Collective]**

86.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

87.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

88.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

89.     Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

90.     At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

91.     The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §

516.4.

92.     Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

93.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT IV.
### [CMWA Overtime Violations
### On Behalf of Plaintiffs and Rule 23 Class]

94.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

95.     At all relevant times, Plaintiffs were employed by the Defendants within the meaning of Conn. Gen. Stat. §31-58(f).

96.     This claim is brought individually on behalf of the named Plaintiffs as well as on behalf of the Class.

97.     Defendants willfully violated the rights of Plaintiffs and all other members of the Connecticut Class by failing to pay overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek in violation of Conn. Gen. Stat. §31-76c.

98.     Defendants willfully failed to distribute records of hours worked, earnings, and overtime to the salon workers, in violations of Conn. Gen. Stat. §31-13a.

99.     Defendants willfully failed to keep records of hours worked by the salon

workers, in violation of

100.   Based upon the foregoing, Defendants' conduct in this regard was a willful violation of the CMWA, and entitles Plaintiffs and all other members of the Connecticut Class to overtime compensation for all hours worked in excess of forty per week at one and one-half times the regular rate, penalty damages, interest, and court costs.

101.   Defendants' conduct in failing to pay Plaintiffs and all other members of the Connecticut Class their overtime compensation was unreasonable, arbitrary and/or in bad faith, in that Defendants knew or should have known that they were entitled to be paid for all hours worked in excess of forty per week at one and one-half times the regular rate, but failed to do so.  Accordingly, Plaintiffs and all other members of the Connecticut Class are entitled to compensation for all hours worked at one and one-half times the regular rate, penalty damages, attorneys' fees, and court costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)   Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)   Certification of this case as a collective action pursuant to FLSA;

c)       Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)       A declaratory judgment that the practices complained of herein are unlawful under FLSA and CMWA;

e)       An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)       An award of unpaid minimum wage and overtime wages due under FLSA and CMWA due Plaintiffs and the Collective Action members plus compensatory and liquidated damages;

g)       An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

h)       An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b);

i)       The cost and disbursements of this action;

j)       An award of prejudgment and post-judgment fees;

k)       Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York                    By:  _____/s/ John Troy_____
                                                             John Troy (JT0481)