## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SHANGMING LU and MARIA OLGA
LLIGUICOTA, individually and on behalf of
all others similarly situated,
     *Plaintiffs*,

      v.

DIAMOND NAIL SALON, LLC,
GREENWICH NAILS & SPA, LLC,
GREENWICH DIAMOND NAILS & SPA
INC., GUI BIAO QI, ELAINE BAO, and
JOSE F. ROJAS,
     *Defendants.*

No. 3:19-cv-02017 (VAB)

## RULING AND ORDER ON CONDITIONAL CERTIFCATION
## AND NOTICE TO POTENTIAL PLAINTIFFS

Shangming Lu and Maria Olga Lliguicota (together, "Plaintiffs"), individually and on

behalf of all others similarly situated, filed this action against Diamond Nail Salon, LLC,

Greenwich Nails & Spa, LLC, Greenwich Diamond Nails & Spa Inc., Gui Bao Qi, Elaine Bao,

and Jose F. Rojas (collectively, "Defendants") under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201 *et seq.,* and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. §

31-68 *et seq.*, alleging overtime and wage violations. Am. Compl., ECF No. 37 ¶¶ 1-4 (Dec. 29,

2020).

Plaintiffs now move for conditional certification, notice to potential opt-in plaintiffs, and

disclosure of contact information for potential opt-in plaintiffs. Notice of Pls.' Mot. for

Conditional Collective Certification, ECF No. 38 (Dec. 29, 2020) ("Pls. Mot.")

For the following reasons, Plaintiffs' motion is **GRANTED in part** and **DENIED in**

**part**.

1

The Court grants conditional certification for all current and former nail workers, massagers, and drivers employed by Defendants from December 29, 2016 to the date of this Order, finding that Plaintiffs have made the factual showing required to infer that these employees were subject to a common policy or plan that violated the law. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).

The Court orders that the notice to potential opt-in plaintiffs (1) be provided in both English, Chinese, and Spanish; (2) include contact information for both Plaintiffs' and Defendants' counsel; and (3) provide a ninety (90)-day opt-in period. This notice shall be disseminated  by mail, e-mail, text message, or social media to potential opt-in plaintiffs. Notice also shall be posted at the locations of Defendants' stores and Plaintiffs may send reminder notifications during the notice period.

The Court orders the parties to confer and revise the notice and consent form described in the following paragraph consistent with this Order and submit a final version for the Court's approval by **July 16, 2021**.

The Court further orders Defendants to disclose to Plaintiffs' counsel, in the form of an Excel spreadsheet, the names, last known addresses, e-mail addresses, telephone numbers, any known social media handles, dates of employment, and positions of Defendants' employees within the proposed opt-in plaintiff class by **July 2**, **2021**, within fourteen (14) days of this Order.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Shangming Lu allegedly "worked as a company transportation van driver and nail salon massager" and Maria Olga Lliguicota allegedly "worked as a nail salon manicurist and pedicurist

2

for Defendants" at Diamond Nail & Spa ("Diamond Nail"). Mem. of L. in Supp. of Pls.' Mot.,
ECF No. 40 at 2-3 (Dec. 29, 2020) ("Pls. Mem.").

Plaintiffs allege there are three types of employees who work at Diamond Nails: nail
workers, massagers, and van drivers. *Id.* at 3. Plaintiffs allege that they and their coworkers,
regardless of job title, were "paid a flat daily rate without any overtime premiums for the hours
they worked in excess[] of forty (40) hours in a single work[]week." *Id.*

Plaintiffs further allege that they "have never received at least the minimum wage as
required to be paid under the CMWA." *Id.*

From about December 2016 to March 16, 2020, Shangming Lu was allegedly "paid fifty
dollars ($50) per day, and an additional twenty dollars ($20) a day if he drove the company's
transportation van." *Id.* at 4. Plaintiffs allege "Defendants also owed [Shangming] Lu the
promised wages in [the] amount of around three[]hundred and forty dollars ($340)." *Id.* at 3.
Defendants allegedly "asked [Shangming] Lu to pay off two[]hundred dollars ($200) per month
out of his pocket for the losses of [a] car accident incurred by [Mr. Lu] on February 2, 2019
while he [was] driving the company's transportation van." *Id.*

From about January 1, 2012 to December 31, 2014, Maria Lliguicota was allegedly "paid
at a flat rate of sixty ($60) per day in cash." *Id.* at 4. After, she allegedly was "paid a rate of
sixty-five ($65) in 2015, seventy dollars ($70) per day in 2016, seventy-five dollars ($75) per
day in 2017, eighty dollars ($80) per day in 2018, and finally ninety dollars ($90) per day in
2019," all in cash. *Id.*

During Shangming Lu and Maria Lliguicota's employment with Defendants, Plaintiffs
allegedly "worked side by side and befriended other employees at Diamond Nail who also
worked similarly long work hours without a commensurate payment of at least overtime . . . , or

the minimum wage rate for each hour they actually worked." *Id.* at 5. Plaintiffs allege that a number of employees worked hours in excess of 40 hours a week without minimum wage and/or overtime. *Id.*

In or about May 2019, Gui Bao Qi allegedly "required his employees to return their checks containing the awards" allegedly imposed by the Connecticut Department of Labor against Gui Bao Qi for "wage-and-hour related violations." *Id.* at 3.

Plaintiffs allege "Defendants failed to compensate Diamond Nail employees overtime premiums even those weeks they worked more than forty (40) hours per week, and wages beyond regularly scheduled hours." *Id.* at 5.

### B. Procedural Background[1]

On December 29, 2019, Plaintiffs filed a Complaint against Defendants. Compl., ECF No. 1 (Dec. 29, 2019).

On August 7, 2020, Defendants moved to dismiss the Complaint for lack of jurisdiction. Mot. to Dismiss, ECF No. 23 (Aug. 7, 2020).

On August 28, 2020, Plaintiffs filed a cross-motion to amend their complaint and opposition to Defendants' motion to dismiss. Pls.' Cross Mem. of L. in Supp. of Mot. to Am. Compl. and in Opp'n to Def's 12(b)(6) Mot. to Dismiss, ECF No. 25 (Aug. 28, 2020).

On October 2, 2020, Plaintiffs requested the Court grant their cross-motion to amend the complaint as unopposed and deny Defendants' motion to dismiss as moot. Pls.' Letter Requesting to Grant Pls. Cross-Mot. to Am. Compl. and Deny Defs. Mot. to Dismiss as Moot, ECF No. 29 (Oct. 2, 2020).

---

[1] The Court will limit the procedural history to only those events relevant to the issue of conditional class certification.

On October 23, 2020, the Court granted Plaintiffs' cross-motion to amend and denied Defendants' motion to dismiss as moot. Order, ECF No. 32 (Oct. 23, 2020).

On November 3, 2020, Defendants moved for reconsideration of the Court's Order denying their motion to dismiss. Mot. for Recons., ECF No. 33 (Nov. 3, 2020).

On December 29, 2020, Plaintiffs filed the Amended Complaint. Am. Compl.

That same day, Plaintiffs also moved for conditional class certification with supporting materials. Pls. Mot.; Aff. of Shangming Lu in Supp. of Mot. for Conditional Collective Certification, ECF No. 39-5 (Dec. 29, 2020) ("Lu Decl."); Aff. of Maria Olga Lliguicota in Supp. of Mot. for Conditional Collective Certification, ECF No. 39-6 (Dec. 29, 2020) ("Lliguicota Decl.").

On January 11, 2021, Defendants filed an objection to the Amended Complaint. Omnibus Obj. to Am. Compl., ECF No 44 (Jan. 11, 2021).

On January 28, 2021, the Court denied Defendants' motion for reconsideration and identified the operative Complaint. Order, ECF No. 47 (Jan. 28, 2021); *see also* Am. Compl.

On March 26, 2021, Defendants filed an Answer to the Amended Complaint. Answer & Special Defs., ECF No. 56 (Mar. 26, 2021).

On March 29, 2021, Defendants filed an objection to the motion for conditional class certification. Obj. to Mot. for Conditional Class Certification, ECF No. 57 (Mar. 29, 2021) ("Defs. Obj.").

On April 9, 2021, Plaintiffs replied to Defendants objection to their motion for conditional class certification. Reply Mem. of L. in Supp. of Pl's. Mot. for Conditional Certification Pursuant to the FLSA, ECF No. 61 (Apr. 9, 2021) ("Pls. Reply").

## II.   STANDARD OF REVIEW

In 1938, Congress enacted the Fair Labor Standards Act ("FLSA") to "eliminate" "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202 (a–b). "In furtherance of this goal, the FLSA imposes numerous 'wage and hour' requirements, including an overtime provision mandating employers to pay non-exempt employees time-and-a-half for each hour worked in excess of 40 hours per week." *Lassen v. Hoyt Livery Inc.*, No. 3:13-CV-01529 (JAM), 2014 WL 4638860, at *3 (D. Conn. Sept. 17, 2014). Section 216(b) of the Act creates a private cause of action for FLSA violations for individual employees or collectives of "similarly situated" employees. 29 U.S.C. § 216(b); *Lassen*, 2014 WL 4638860, at *3.

The Second Circuit has adopted a two-step approach to FLSA conditional certification. *Myers*, 624 F.3d at 554-55. "Although they are not required to do so by FLSA, district courts have discretion, in appropriate cases, to implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Id.* at 554 (alterations and internal quotation marks omitted). "In determining whether to exercise this discretion in an 'appropriate case,' the district courts of this Circuit appear to have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible." *Id.* at 554-55 (alterations omitted).

"The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* at 555. "The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were

6

victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) ("Plaintiffs have amply satisfied this burden. They have made substantial allegations, both in their Complaint and supporting affidavits, that Sbarro's restaurant managers were subject to reductions in their compensation as result of a uniform company–wide policy requiring them to reimburse defendant for cash shortages and other losses.")).

Some courts adopt a modest-plus, or heightened, review standard once some discovery has been completed. *See Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480-81 (S.D.N.Y. 2016) ("Where, as here, a conditional certification motion is made after some, but not all, discovery has occurred, it remains an open question whether some kind of 'intermediate scrutiny' should apply. . . . [T]here is less consensus within the Circuit than might appear at first blush."). The Second Circuit, however, has yet to adopt a modest-plus or intermediate scrutiny standard. *See Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) ("We certified for immediate review the question of whether a higher standard, urged by defendants, applies to motions to conditionally certify an FLSA collective made after discovery. We do not need to decide that question, however, because . . . we cannot, on the record before us, conclude that the plaintiffs in [the] proposed collective are similarly situated, even under the minimal pre-discovery standard.").

Thus, while a court will review the evidence produced through pre-certification discovery carefully, the "modest factual showing" standard still governs that review. *Myers*, 624 F.3d at 555. "The modest factual showing cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether similarly situated plaintiffs do in fact exist." *Id.* (internal quotation marks,

emphasis, and citations omitted). Then, "[a]t the second stage, the district court will, on a fuller record, determine whether a . . . collective action may go forward by determining whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." *Id.* (internal quotation marks omitted). "The action may be de-certified if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.* (internal quotation marks omitted)).

## III. DISCUSSION

### A. Conditional Certification

"To clear the first hurdle of collective action certification, FLSA plaintiffs must make a 'modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.'" *Shillingford v. Astra Home Care, Inc.,* 293 F. Supp. 3d 401, 407 (S.D.N.Y. 2018) (quoting *Myers*, 624 F.3d at 555). A conditional certification may be granted on as modest a factual showing as "a single plaintiff's affidavit." *Escobar v. Motorino E. Vill. Inc.*, No. 14 CIV. 6760 (KPF), 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015). "This simple [or modest] showing requirement can be met by evidence that other employees had similar job requirements and pay provisions." *Lassen*, 2014 WL 4638860, at *4 (internal quotation marks omitted). "[A]t this first stage, the [C]ourt does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Escobar,* 2015 WL 4726871, at *2 (internal quotation marks omitted).

This burden, however, "is not non-existent and the factual showing, even if modest, must still be based on some substance." *Guillen v. Marshalls of MA, Inc.,* 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010). "[When] deciding whether to grant the [conditional certification] motion, the Court must merely find some identifiable factual nexus which binds the named plaintiffs and

potential class members together as victims of a particular practice." *Alvarez v. Schnipper Restaurants LLC*, No. 16 CIV. 5779 (ER), 2017 WL 6375793, at *2 (S.D.N.Y. Dec. 12, 2017) (internal quotation marks and alterations omitted).

Plaintiffs argue that they

> were employed by Defendants during [the] applicable FLSA statutory period and were subjected to Defendants' common policy of not paying [] at least the one and one half (1.5x) rate[,] the equivalent hourly rate[,]  or the minimum wage, whichever is higher, for each hour worked in excess of forty (40) in a work[]week.

Pls. Mem. at 12. Plaintiffs contend that their experience was "not unique" and that "the manner in which they were compensated was and remains standard operating procedure with regard to other nail workers, massagers, and driver[s] at Diamond Nail." *Id.* As examples, Plaintiffs allege "Sue," "Jackie," "Sally," "Lilly," "Anna," and "Cara," are nail workers who worked in excess of forty hours, but were paid flat daily wages. *Id.* at 13 (citing Lu Decl. ¶¶ 27, 30, 43, 50, 56, 62, 68; Lliguicota Decl. ¶¶ 24, 30, 36, 42, 48, 54, 60). "David" is allegedly a masseur and driver who also worked more than forty hours a week for several years at different flat daily rates. *Id.* (citing Lu Decl. ¶¶ 74-77; Lliguicota Decl. ¶¶ 66-68). Plaintiffs argue that these examples "warrant[] the certification of the non-exempt nail workers[,] massagers[,] and drivers . . . at Diamond Nail." *Id.*

Defendants argue that "the affirmative defenses to the Amended Complaint indicate settlement and release as well as equitable estoppel and fraudulent inducement issues." Defs. Obj. at 3. Defendants also contend that Plaintiffs have not established any efforts made "to ascertain any other individuals." *Id.* at 2. In Defendants' view, "[n]one of . . . Plaintiffs' filings indicate that there are putative employees with a desire to join the action." *Id.* at 3. Defendants argue "'certification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit.'" *Id.* at 6 (quoting *Rodgers v.*

9

*CVS Pharm., Inc.*, No. 8:05-CV770T-27 (MSS), 2006 WL 752831, at *3 (M.D. Fl. Mar. 23, 2006)) (first alteration omitted). Defendants maintain "Plaintiffs are far too individualized to warrant class certification." *Id.* at 7.

Plaintiffs reply that they "need not prove the exact number of proposed class members as long as they can reasonably estimate the size of the class" and that "the Court should grant [their] requests to conditionally certify the collective action as to all the non-exempt and non-managerial employees who were employed by Defendants anytime from December 29, 2016 to the present." Pls. Reply at 5. Plaintiffs contend that their affidavits are sufficient "support of motion for conditional collective certification." *Id.* Plaintiffs argue that they are not required "'to identify similarly situated employees by name to obtain conditional certification.'" *Id.* at 6 (quoting *Hernandez v. Immortal Rise, Inc.*, No. 11-cv-4360 (RRM) (LB), 2012 WL 4369746, at *4 (E.D.N.Y. Sept. 24, 2012)). Plaintiffs maintain that "they have provided sufficient information with regards to their appearance, position, working days, hours, their pay structure and days off" to make "the modest factual showing that there are other employees that may be similarly situated." *Id.* at 7.

The Court agrees.

With their affidavits, Plaintiffs have met their burden of a "modest factual showing." *Myers,* 624 F.3d at 555. "Specific factual allegations can include the names of similarly situated employees, their job titles, as well as information as to their duties and the hours they worked." *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 481 (S.D.N.Y. 2016); *Qing Gu v. T.C. Chikurin, Inc.*, No. CV 2013-2322 SJ (MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014) (collecting cases); *Silva v. Calle 8, LLC*, No. CV 2012-677 (ERK) (MDG), 2013 WL 6330848, at *3 (E.D.N.Y. Dec. 5, 2013) (collecting cases). Plaintiffs attest that they and other

employees of the Defendants worked in excess of forty hours a week, but did not receive overtime pay and instead, received flat daily wages. *See* Pls. Mem. at 12-13; Lu Decl. ¶¶ 23-78; Lliguicota Decl. ¶¶ 20-69. These sworn statements establish the names, duties, and hours of other similarly situated employees, *see Benavides,* 166 F. Supp. 3d at 481, and that they "together[, with potential opt-in plaintiffs,] were victims of a common policy or plan that violated the law." *Myers,* 624 F.3d at 555.

Although Defendants argue that Plaintiffs have not adequately identified potential opt-in plaintiffs and that their affirmative defenses prevent the lawsuit from going forward, Defs. Obj. at 3-6, at this initial stage, the Court will not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Escobar,* 2015 WL 4726871, at *2 (internal quotation marks omitted).

Accordingly, Plaintiffs' motion for conditional certification will be granted.

### B. Proposed Opt-In Class

Plaintiffs conclude that "the certification of a collective including sushi bar chefs, kitchen chefs, and waitresses, who worked or have worked for Diamond Nail is appropriate." Pls. Mem. at 14. As nothing else in Plaintiffs' filings make references to these job titles, the Court will assume this description of the proposed class was made in error. Although a specific and consistent description of the proposed class is not present in Plaintiffs' memorandum of law in support of their motion, Plaintiffs argue in their reply that "the Court should grant [their] requests to conditionally certify the collective action as to all the non-exempt and non-managerial employees who were employed by Defendants anytime from December 29, 2016 to the present." Pls. Reply at 5. Plaintiffs also request the disclosure of contact information for "all current and

former non-exempt and non-managerial employees employed at any time from December 29, 2016 to the date when . . . Defendants provide the name list." Pls. Mot. at 2.

With regard to the proposed opt-in class, Defendants question whether there are members of the proposed class "with a desire to join the action." Defs. Obj. at 3. Defendants also object to the conditional certification of the proposed class because "[t]here are not allegations or facts to even suggest that . . . Plaintiffs are represented by counsel with sufficient resources to adequately protect any interest of the class or that they will fairly represent the class." *Id.* at 4.

The Court disagrees.

Defendants objections are better suited for a later stage in litigation. *See Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("During the second stage, the court undertakes a more stringent factual determination as to whether members of the class are, in fact, similarly situated. This stage typically occurs on a defendant's motion for decertification. As a result of this two-step stage, the initial 'conditional certification' determination is merely a preliminary finding. If, after discovery, it is apparent that plaintiffs and others are not similarly situated, the court may 'de-certify' the class and dismiss the claims of the opt-in plaintiffs without prejudice." (internal citations omitted)).

As to the proposed opt-in class, the sworn statements by Plaintiffs presented as evidence of similarly situated employees only discuss nail workers, massagers, and drivers. *See* Lu Decl.; Lliguicota Decl. Plaintiffs propose, however, a class of "all current and former non-exempt and non-managerial employees." Pls. Mot. at 2; Pls. Reply at 5. Without specific references to such employees in Plaintiffs declarations, this proposed class is too "vague and conclusory . . . to support conditional certification of the proposed collective." *Chui v. Am. Yuexianggui of LI LLC*, No. CV185091 (SJF) (AKT), 2020 WL 3618892, at *8 (E.D.N.Y. July 2, 2020) (declining to

certify "a broader collective that includes 'all non-exempt and non-managerial employees' of Defendants"); *see also Benavides*, 166 F. Supp. 3d at 481-82 ("Conclusory allegations are not sufficient to support a motion for conditional collective action certification."); *see also Sanchez v. JMP Ventures, L.L.C.*, No. 13 CIV. 7264 (KBF), 2014 WL 465542, at \*1-\*2 (S.D.N.Y. Jan. 27, 2014) (denying conditional certification where plaintiff provided only "generalized allegations" without "any detail as to a single such observation or conversation"); *Prizmic v. Armour, Inc.*, No. 05-CV-2503 (DLI) (MDG), 2006 WL 1662614, at \*2 (E.D.N.Y Dec. 7, 2012) (finding "mere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made."). Plaintiffs' "[s]pecific factual allegations," *Benavides*, 166 F. Supp. 3d at 481, however, regarding "similarly situated" nail workers, massagers, and drivers are sufficient to support conditional certification, *Lynch*, 491 F. Supp. 2d at 368 ("The first step is the notice stage in which the court determines, based on plaintiffs' pleadings and affidavits, whether the plaintiffs and potential opt-in plaintiffs are sufficiently 'similarly situated' to issue notice and allow the case to proceed as a collective action through discovery.").

Accordingly, the Court denies certification of Plaintiffs' proposed class, but will grant conditional certification for all current and former nail workers, massagers, and drivers employed by Defendants from December 29, 2016 to the date of this Order.

### C.  Notice to Potential Plaintiffs

Plaintiffs make several specific requests with regard to notice. Apart from their objections to the certification of a conditional class, which the Court has rejected, Defendants make no explicit objections to Plaintiffs proposed notice.

### i. Notice Language

Plaintiffs "propose[] a Notice of Pendency and Consent Form in Chinese and Spanish" as the predominant languages of the proposed class. Pls. Mem. at 15.

"Generally, courts permit notice to be translated into the mother tongue of non-English speaking groups of potential plaintiffs." *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016) (internal quotation marks omitted).

As the translation will assist in the identification of potential opt-in plaintiffs, and Defendants do not object, the Court will grant Plaintiffs' request for English, Chinese, and Spanish translations of notice.

### ii. Exclusion of Defendants' Attorney Information

Plaintiffs further request the "exclusion of Defendants' attorney information." Pls. Mem. at 21.

Courts in this Circuit "have generally concluded that the contact information of defendants' counsel is appropriate for inclusion in a notice of collective action." *Benavides,* 166 F. Supp. 3d at 486 (internal quotation marks and alterations omitted) (collecting cases). This contact information, however, must be sufficiently set apart and explained to "avoid unnecessary confusion." *Whitehorn v. Wolfgang's Steakhouse, Inc.,* 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) ("Defendant's request to include defense counsel's contact information is . . . reasonable, and the notice should be so amended. However, this information belongs under a separate heading . . . in order to avoid unnecessary confusion." (citation omitted)). Contact information about Defendants' counsel

> should be set apart in two separate sections. The first section should state that, if a potential plaintiff joins this suit and agrees to be represented by the named plaintiff through her attorney, he or she will be represented by [Plaintiffs' counsel] and provide plaintiffs

14

> counsel's full names, mailing address, and phone number. The second section should state that defendants in this case are represented by [Defendants' counsel], provide counsel's full names, mailing address, and phone number, and include the following language: <u>If you decide to join this case, you should not contact the defendants' lawyer but instead rely on your counsel to do so.</u>

*Benavides*, 166 F. Supp. 3d at 487 (emphasis in original) (citations omitted).

Accordingly, the Court will deny the request to exclude contact information of Defendants' counsel. The notice shall include two separate sections for each set of counsel. The first section shall state that "if a potential plaintiff joins this suit and agrees to be represented by the named plaintiff through her attorney, he or she will be represented by Plaintiffs' counsel and provide plaintiffs counsel's full names, mailing address, and phone number." *Id.* The second section shall state that "[D]efendants in this case are represented by [Defendants' counsel and] provide counsel's full names, mailing address, and phone number, and include the following language: <u>If you decide to join this case, you should not contact the defendants' lawyer but instead rely on your counsel to do so.</u>" *Id.* (emphasis in original).

### iii.   Opt-in Period

Plaintiffs assert that the "opt-in period should be . . . 90 days" to "allow the greatest number of Plaintiffs to opt into the action." Pls. Mem. at 24.

As "60– or 90–day opt-in periods are common in FLSA collective actions," *Cortes v. New Creators, Inc.,* No. 15 CIV. 5680 (PAE), 2015 WL 7076009, at *6 (S.D.N.Y. Nov. 12, 2015) (collecting cases), and the "defendants [have not] made any showing that an opt-in period of this length will prejudice them in any way," *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 241 (N.D.N.Y. 2002) (granting a nine month opt-in period), the Court will grant Plaintiffs' request for a ninety (90)-day opt-in period.

#### iv.   Anchor Date

Plaintiffs contend that "the opt-in anchor date should be from the Complaint filing date." Pls. Mem. at 24 (emphasis omitted). Plaintiffs also argue that "the contents of any notice should provide for a three-year statute of limitations afforded to claims of willful violations of the FLSA, as opposed to a two-year limitations period" because "Plaintiffs' allegations of willful violations of the FLSA minimum wage and overtime provisions" and "the FLSA expressly permits a three-year statute of limitations to remedy willful violations of the Act." *Id*. at 25. Although their argument largely centers on circumstances in New York, rather than Connecticut where this action is based, Plaintiffs contend that the COVID-19 pandemic "is an extraordinary circumstance" that "warrant[s] equitable tolling." *Id*. at 27.

"At th[e] preliminary stage, . . . Plaintiff's allegations of willfulness [are] sufficient to justify application of the three[-]year statute of limitations." *Jurowski v. Hunter Kroner Ltd.,* No. 10-CV-1708 (CS), 2011 WL 13382900, at *1 (S.D.N.Y. July 14, 2011); *Neary v. Metropolitan Property & Cas. Ins.* Co., 517 F. Supp. 2d 606, 623 (D. Conn. 2007) ("Plaintiff's allegations of willful violation [in its Complaint] are sufficient, at this preliminary notice stage where merits are not considered, to support defining the class on the basis of the three-year statute of limitations."). "[B]ecause equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiff's actions will be entertained at a later date." *Bittencourt v. Ferrara Bakery & Cafe Inc.,* 310 F.R.D. 106, 116 (S.D.N.Y. 2015) (internal quotation marks omitted); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) ("Out of an abundance of caution, and seeking to avoid any merit-based determinations at this time, the Court will conditionally certify class

members employed by [Defendant] over the past three years pursuant to possible decertification at a later time. Specific challenges to the timeliness of the claims of certain 'opt-in' plaintiffs or the named Plaintiff can be addressed after the completion of discovery during the second phase of the collective action certification process."); *Trinidad v. Pret A Manger (USA) Ltd.,* 962 F. Supp. 2d 545, 564 n. 14 (S.D.N.Y. 2013) ("Should equitable tolling issues arise in this case after conditional certification as to particular plaintiffs, the Court will timely address those issues.").

As Defendants do not raise any objections to the anchor date or to Plaintiffs' allegations of willfulness, at this initial stage, the Court will "permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs actions will be entertained at a later date." *Bittencourt*, 310 F.R.D. at 116. The Court, however, will defer any decision on equitable tolling to "avoid any merit-based determinations at this time." *Fasanelli,* 516 F. Supp. 2d at 323.

### v.  Proposed Plaintiffs Information Disclosure

Plaintiffs request

> Defendants produce a Microsoft Excel data file containing contact information . . . including but not limited to last known mailing addresses, la[st] known telephone numbers, last known email addresses, last known WhatsApp, WeChat[,]   and/or FaceBook usernames, work location[s], dates of employment, and position[s] . . . for all non-managerial employees who worked for Defendants from December 29, 2016 to the present day.

Pls. Mem. at 15-16. Plaintiffs also propose that the Court order this information produced within fourteen (14) days of the entry of this Order. Pls. Mot. at 2.

"In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, e-mail addresses, and dates of employment of potential collective members." *Valerio*, 314 F.R.D. at 74-75; *Gui Zhen Zhu v. Matsu Corp*, 424 F. Supp.

3d 253, 273 (D. Conn. 2020) ("At the notice stage in FLSA collective actions, plaintiffs are generally permitted to discover contact information of similarly situated employees—including their names, addresses, telephone numbers, and dates of employment.").

Some courts have permitted the disclosure of social media handles. *See Zhongle Chen v. Kicho Corp.*, No. 18CV7413 (PMH) (LMS), 2020 WL 1900582, at *9 (S.D.N.Y. Apr. 17, 2020) ("If Defendants have other contact information for potential collective action members in their possession, including social media handles, Defendants must produce that information as well."); *Huer Huang v. Shanghai City Corp*, No. 19-CV-7702 (LJL), 2020 WL 5849099, at *15 (S.D.N.Y. Oct. 1, 2020) (ordering the production of available contact information including social media handles); *Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18CV12220 (PAE) (RWL), 2019 WL 4493429, at *21 (S.D.N.Y. Sept. 9, 2019) (recommending that "Defendants be ordered to provide Plaintiffs with a computer-readable list of the names, mailing addresses, telephone numbers, email addresses, social media usernames, work location, employment dates, and employment position"). But other courts have found this information unnecessary for adequate notice. *See Chui*, 2020 WL 3618892, at *13 ("[T]he Court declines to direct Defendants to produce the remaining requested information since doing so would be burdensome on Defendants and would not serve to facilitate the notice process under these circumstances where the Court has limited the methods of dissemination to exclude social media."); *Lanqing Lin v. Everyday Beauty Amore Inc.,* No. 18-CV-729 (BMC), 2018 WL 6492741, at *9 (E.D.N.Y. Dec. 10, 2018) (declining to order the disclosure of social media handles because "the Court sees no reason why notice should be provided in this manner").

"[T]he format [of an Excel spreadsheet] has been deemed appropriate by the courts in this Circuit." *Gui Zhen Zhu*, 424 F. Supp. 3d at 273; *see also Jeong Woo Kim v. 511 E. 5th St., LLC,*

985 F. Supp. 2d 439, 452 (S.D.N.Y. 2013) (ordering that the list of employees be produced "in Excel format"); *Lynch*, 491 F. Supp. 2d at 371 (ordering that the list of employees be produced in "electronic and importable format"); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265(PAE), 2012 WL 1981507, at *2 (S.D.N.Y. 2012) (ordering the defendants to produce "a computer-readable list" of employees).

Courts have also ordered production of employee information within fourteen (14) days of an order addressing conditional class certification. *Valerio*, 314 F.R.D. at 75 (ordering "a list of the names, addresses, telephone numbers, email addresses, work locations and dates of employment for all potential class members . . . within 14 days"); *Jeong Woo Kim*, 985 F. Supp. 2d at 452 (same).

Defendants do not specifically object to any of these requests. Thus, the Court finds it "appropriate . . . to order the discovery of names, addresses, telephone numbers, e-mail addresses, and dates of employment of potential collective members," *Valerio*, 314 F.R.D. at 74–75, in Excel format and within fourteen (14) days. As to the disclosure of social media handles, Defendants have not indicated that doing so would be "burdensome," *Chui*, 2020 WL 3618892, at *13, and Plaintiffs have indicated that this contact information is necessary to provide notice to potential opt-in class members, *see* Pls. Mem. at 15. The Court finds that any known social media handles should be included in the disclosure of employee contact information.

Accordingly, the Court will order the disclosure in the format of an Excel spreadsheet of the names, last known addresses, e-mail addresses, telephone numbers, any known social media handles, dates of employment, and positions of Defendants' employees within the proposed opt-in plaintiff class by July 2, 2021, within fourteen (14) days of this Order.

19

vi.   **Service of the Notice**

Plaintiffs request the proposed "Notice of Pendency and Consent Form [be] disseminated in any relevant language, via mail, email, text message, or social media group and individual chat and posts, to all potential members of the collective." Pls. Mem. at 20. Additionally, Plaintiffs request "authorization of the publication of the full opt-in notice on Plaintiffs' counsel's website, which allows for electronic submission of the Consent to Join Form, and for potential opt[-]ins to contact Plaintiffs' counsel for additional information." *Id.* at 21. Plaintiffs also request "the Notice of Pendency and Consent Form be posted on the conspicuous locations of Defendants' stores." *Id.* at 15. Plaintiffs further request leave to "send a reminder mailing and email to all unresponsive collective action members half-way through the notice period." *Id.* at 23.

Plaintiffs cite *Varghese v. JP Morgan Chase & Co.* to support their request to publish notice on Plaintiffs' counsel's website. No. 14 CIV. 1718 (PGG), 2016 WL 4718413, at *9 (S.D.N.Y. Sept. 9, 2016). In *Varghese,* the court determined that "the same logic [that allowed for the dissemination of notice via email] support[ed] dissemination of notice via website." *Id.* (citing *Mark v. Gawker Media LLC,* No. 13-CV-4347 (AJN), 2014 WL 5557489, at *3 (S.D.N.Y. Nov. 3, 2014) (authorizing notice via "two stand-alone websites that will give potential plaintiffs the ability to download and submit the consent form electronically")). Plaintiffs, however, do not intend to post notice on a "stand-alone" website, but on Plaintiffs' counsel's website. Pls. Mem. at 21. Moreover, Plaintiffs have "not provided any justification or support to disseminate Notice on the website of Plaintiff[s'] counsel and the Court has no basis on which to find that posting the Notice on counsel's own website would reach potential plaintiffs in a way that mail, text, and email would not." *Ni v. Red Tiger Dumpling House Inc,*

No. CV19-3269 (GRB) (AKT), 2020 WL 7078533, at *12 (E.D.N.Y. Nov. 30, 2020) (declining to "permit Plaintiff's counsel to disseminate the Notice through counsel's website"); *see also Zhongle Chen v. Kicho Corp.*, No. 18-CV-7413, 2020 WL 1900582, at *10 (S.D.N.Y. Apr. 17, 2020) (declining to permit the notice of pendency on counsel for plaintiff's website without any justification for the need to do so).

As to the other requests, "[c]ourts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *Whitehorn,* 767 F. Supp. 2d at 449 (collecting cases). And courts have "granted reminder notice requests." *Zhongle Chen*, 2020 WL 1900582, at *11 (citing *Chhab v. Darden Rest., Inc.*, No. 11 CIV. 8345 (NRB), 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) (granting a reminder notice); *Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 274-75 (S.D.N.Y. 2012)(same)).

Accordingly, the Court will grant notice by mail, e-mail, text message, or social media to all members of the opt-in class. Notice shall also be posted at the locations of Defendants' stores and Plaintiffs may send reminder notifications during the notice period. The Court will deny Plaintiffs' request to post notice on their counsel's website.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' motion for conditional certification and notice to potential plaintiffs is **GRANTED in part** and **DENIED in part**.

The Court grants conditional certification for all current and former nail workers, massagers, and drivers employed by Defendants from December 29, 2016 to the date of this Order, finding that Plaintiffs have made the factual showing required to infer that these

employees were subject to a common policy or plan that violated the law. *See Myers*, 624 F.3d at 555.

The Court orders that the notice to potential opt-in plaintiffs (1) be provided in both English, Chinese, and Spanish; (2) include contact information for both Plaintiffs' and Defendants' counsel; and (4) provide a ninety (90)-day opt-in period. This notice shall be disseminated via mail, email, text message, or social media to potential opt-in plaintiffs. Notice shall also be posted at the locations of Defendants' stores and Plaintiffs may send reminder notifications during the notice period.

The Court orders the parties to confer and revise the notice and consent form described in the preceding paragraph consistent with this Order and submit a final version for the Court's approval by **July 16, 2021**.

The Court further orders Defendants to disclose to Plaintiffs' counsel, in the form of an Excel spreadsheet, the names, last known addresses, e-mail addresses, telephone numbers, any known social media handles, dates of employment, and positions of Defendants' employees within the proposed opt-in plaintiff class by **July 2, 2021**, within fourteen (14) days of this Order.

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of June, 2021.

 /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE